UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
KOURIOCKEIN VANN,
              Plaintiff,

v.

SUPERINTENDENT T. GRIFFIN; SGT.
ROSER; DEPUTY COMM'R OF SPECIAL
OPERATIONS, P. GRIFFIN; I.G.R.C.
SUPERVISOR, L. STANAWAY; C.O. J.
MORRISSEY; C.O. WARREN FREEMAN;
C.O. MARGENTE; C.O. D. SMITH, CLAIMS
OFFICER; C.O. CACUZZA JR.; SGT.
CACUZZA SR.; SGT. P. MOREAU; SGT.
OSBORNE; CAPT. CAREY; C.O. POLITO;
SGT. SURBER; LT. PLIMELY; LT. S. HANN;
C.O. Q. STEVENS; C.O. ELIEZER; and
Employees for the NYSDOCCS at Green Haven
Corr. Fac.,
              Defendants.
--------------------------------------------------------------x

**OPINION AND ORDER**

16 CV 9903 (VB)

Briccetti, J.:

      Plaintiff Kouriockein Vann, proceeding pro se and in forma pauperis, brings this action against Superintendent ("Supt.") T. Griffin, Sergeant ("Sgt.") Roser, Deputy Commissioner of Special Operations P. Griffin, Inmate Grievance Resolution Committee ("IGRC") Supervisor L. Stanaway, Correction Officer ("C.O.") J. Morrissey, C.O. Warren Freeman, C.O. Margente, C.O. D. Smith, C.O. Cacuzza Jr., Sgt. Cacuzza Sr., Sgt. P. Moreau, Sgt. Osborne, Captain ("Capt.") Carey, C.O. Polito, Sgt. Surber, Lieutenant ("Lt.") Plimely, Lt. S. Hann, C.O. Q. Stevens, and C.O. Eliezer, under the Universal Declaration of Human Rights and 42 U.S.C. § 1983.[1]

      Plaintiff alleges violations of his First, Eighth, and Fourteenth Amendment rights. In addition, liberally construed, plaintiff's amended complaint also asserts violations of his Fourth

---

[1] Plaintiff incorrectly sued Sgt. Roser as "Sgt. Rosier" and Sgt. Surber as "Sgt. Surbert (sic)." (Doc. #51 ("Am. Compl.")).

1

Amendment rights and of the Religious Land Use and Institutionalized Persons Act
("RLUIPA"), 42 U.S.C. § 2000cc-1.

Now pending is defendants' motion to dismiss the amended complaint pursuant to Rule 12(b)(6). (Doc. #77).[2]

For the following reasons, defendants' motion is GRANTED.[3]

The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

## BACKGROUND

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the amended complaint, and draws all reasonable inferences in plaintiff's favor, as summarized below. In addition, plaintiff attached several documents to his amended complaint as exhibits, which the Court may consider in deciding the instant motion. See DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).

Plaintiff's amended complaint is difficult to follow. Nevertheless, it is clear that plaintiff's allegations stem from five incidents at Green Haven Correctional Facility ("Green Haven"), described below.

   A.   January 30, 2014

Plaintiff alleges on January 30, 2014, Sgt. Surber, while searching plaintiff, "deliberately 'flicked and rubbed' her fingers across" plaintiff's Santeria beads, which plaintiff was wearing

---

[2] Defendants previously filed a motion to dismiss the complaint on October 19, 2017. (Doc. #44). On October 29, 2017, plaintiff filed a motion for leave to file an amended complaint. (Doc. #47). On November 3, 2017, the Court granted plaintiff leave to file an amended complaint and denied defendants' motion to dismiss without prejudice. (Doc. #50). Plaintiff filed the amended complaint on December 19, 2017. (Doc. #51).

[3] To the extent plaintiff brings claims against unidentified defendants, those claims are likewise dismissed for the reasons contained in this Opinion.

2

around his neck. (Am. Compl. at 7).⁴ Plaintiff told Sgt. Surber that touching the Santeria beads violated his religious beliefs, yet Sgt. Surber "intentionally reache[d] out and grab[bed] all of plaintiff's Santeria beads with her bare hands," threatened plaintiff, and "walk[ed] off smiling." (Id. at 8).

    B.    June 14, 2015

Plaintiff alleges on or about June 14, 2015, C.O. Morrissey, C.O. Freeman, and an unnamed C.O. searched plaintiff's cell under Sgt. Roser's supervision. During the search, C.O. Morrissey and C.O. Freeman took plaintiff's three-gallon bucket and Sangean radio. Further, C.O. Freeman "deliberately touched items sacred to the plaintiff's religious beliefs (cigar, religious pouch containing sea shells, a rock, chicken bones, etc.)," and C.O. Freeman and the other C.O. "deliberately crushe[d] the cigar." (Am. Compl. at 5). C.O. Freeman also "made derogatory and negative comments." (Id.). Sgt. Roser "supported and watched defendants Morrissey and Freeman." (Id. at 6).

C.O. Margente subsequently escorted plaintiff to the body orifice scanner ("B.O.S.S.") chair in his underwear and slippers and with his genitals exposed, in front of male and female personnel. C.O. Margente commented, "we got one winging in the wind guys!" (Am. Compl. at 6) (emphasis removed). Plaintiff alleges C.O. Margente exposed plaintiff to "unsanitary and unsafe conditions" by not protecting plaintiff from "germs and infections to the plaintiff's groin, and other surfaces of the plaintiff's epidermis." (Id.).

Plaintiff further alleges Supt. T. Griffin denied his grievance and thus failed to protect his rights; Supt. T. Griffin and Deputy Commissioner P. Griffin told him if it were up to them, they would never have allowed plaintiff to have the items that were taken from his cell; IGRC

---

⁴     "Am. Compl. at __" refers to the automatically generated page numbers at the top of electronically filed documents.

Supervisor Stanaway violated his rights by allowing Sgt. Roser to investigate plaintiff's grievance, even though Sgt. Roser allowed the underlying acts to occur in the first place; and C.O. Smith denied plaintiff's property claim without giving him a claim number.

    C.    <u>August 7, 2015</u>

Plaintiff alleges on August 7, 2015, Sgt. Cacuzza Sr. and Sgt. Moreau ordered C.O. Cacuzza Jr. to search plaintiff because they thought they had heard a cell phone. Plaintiff asked C.O. Cacuzza Jr. not to touch his Santeria beads. Sgt. Moreau told C.O. Cacuzza Jr. to continue his search, and C.O. Cacuzza Jr. "proceeded to pull all of my beads out of my T-shirt, and then touched them all, leaving them on the outside of my T-shirt." (Am. Compl. at 54).

Plaintiff further claims C.O. Cacuzza Jr. sexually assaulted him by looking in his underwear and his buttocks, which plaintiff claims is not part of a standard search.

Plaintiff asserts he tried to speak about the incident with Sgt. Cacuzza Sr., Sgt. Osborne, and Capt. Carey, all of whom were present, but they refused to speak with him.

    D.    <u>December 17, 2015</u>

Plaintiff alleges on December 17, 2015, C.O. Polito searched plaintiff's cell and ordered plaintiff to take off his Santeria beads, because plaintiff was not permitted to wear them during the search. Plaintiff placed his Santeria beads on his religious altar, which contained other items related to his practice of the Santeria religion. C.O. Polito took plaintiff's items from the altar, threw them on plaintiff's bed, and looked through plaintiff's "religious pouches." (Am. Compl. at 59).

Plaintiff complained to Lt. Hann, but Lt. Hann took no action except to tell plaintiff he should consider himself lucky that Lt. Hann had not performed the search herself.

E.  February 4, 2017

Finally, plaintiff alleges on February 4, 2017, C.O. Stevens searched plaintiff's cell and "desecrated" plaintiff's altar. (Am. Compl. at 8). C.O. Stevens then "maliciously and deliberately discarded and intentionally misplaced all of plaintiff's property in his cell." (Id.). C.O. Eliezer "supported" C.O. Stevens and told plaintiff, "we are corrections officers, we can do anything we want to you. You are an inmate. You cannot do nothing." (Id. at 9) (emphasis removed). Moreover, C.O. Eliezer "threatened to use the disciplinary system" to prevent plaintiff from complaining to the area supervisor. (Id.).

## DISCUSSION

I.  Legal Standard

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). First, plaintiffs' legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

The Court must liberally construe submissions of pro se litigants, and interpret them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks and citation omitted). Applying the pleading rules permissively is particularly appropriate when, as here, a pro se plaintiff alleges civil rights violations. See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008). "Even in a pro se case, however . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks and citation omitted). Nor may the Court "invent factual allegations" plaintiff has not pleaded. Id.

II. First Amendment

Liberally construed, the amended complaint asserts First Amendment free exercise claims against (i) Sgt. Surber and Sgt. Roser for the January 30, 2014, search; (ii) C.O. Freeman for the June 14, 2015, search; (iii) Sgt. Moreau, C.O. Cacuzza Jr., Sgt. Cacuzza Sr., Sgt. Osborne, and Capt. Carey for the August 7, 2015, search; (iv) C.O. Polito and Lt. Hann for the December 17, 2015, search; and (v) C.O. Stevens and C.O. Eliezer for the February 4, 2017, search.

Defendants argue plaintiff's free exercise claims fail because plaintiff fails to allege defendants caused a substantial burden on his sincerely held religious beliefs.

The Court agrees.

"Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." O'Lone v. Estate of Shabazz,

482 U.S. 342, 348 (1987) (internal citation omitted). The First Amendment's free exercise guarantee applies to state actors through the Fourteenth Amendment. Cantwell v. Connecticut, 310 U.S. 296, 303 (1940). An inmate's "right to practice his religion is, however, not absolute." Salahuddin v. Coughlin, 993 F.2d 306, 308 (2d Cir. 1993) (internal citation omitted).

To state a free exercise claim, plaintiff "must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." Salahuddin v. Goord, 467 F.3d 263, 274–75 (2d Cir. 2006) (internal citation omitted). "A substantial burden is more than a mere inconvenience," Gill v. DeFrank, 2000 WL 897152, at *1 (S.D.N.Y. July 6, 2000), aff'd, 8 F. App'x 35 (2d Cir. 2001) (summary order), and exists where the state 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." Newdow v. Peterson, 753 F.3d 105, 109 (2d Cir. 2014) (per curiam) (alteration in original) (quoting Jolly v. Coughlin, 76 F.3d 468, 477 (2d Cir. 1996)).[5]

In addition, corrections facilities may restrict religious exercise so long as such restrictions are "reasonably related to legitimate penological interests." O'Lone v. Estate of Shabazz, 482 U.S. at 349 (citation omitted). Thus, even if plaintiff can establish defendants substantially burdened his right to religious exercise, he cannot state a free exercise claim if defendants can show "the disputed official conduct was motivated by a legitimate penological interest." Salahuddin v. Goord, 467 F.3d at 276

Plaintiff fails sufficiently to allege a substantial burden. Plaintiff alleges on five occasions, defendants interfered with the practice of his religion by touching or moving his Santeria beads, crushing his cigar, looking through his religious pouches, or otherwise desecrating plaintiff's religious objects. None of these actions caused plaintiff "to choose

---

[5] Plaintiff will be provided with copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

between violating a tenet of his beliefs or facing consequences at the hands of the state." Colliton v. Bunt, 2016 WL 7443171, at *11 (S.D.N.Y. Dec. 27, 2016) (citing Newdow v. Peterson, 753 F.3d at 108), aff'd, 709 F. App'x 82 (2d Cir. 2018) (summary order)). Indeed, plaintiff complains of mere inconveniences.

Accordingly, plaintiff's free exercise claims are dismissed.

III. RLUIPA

To the extent plaintiff brings a claim or claims under RLUIPA, those claims are moot because, for the reasons discussed above, there is no continuing burden on plaintiff's religious practice. See Hill v. Chapdelaine, 2017 WL 62511, at *2 (D. Conn. Jan. 5, 2017) (citing Green v. Mansour, 474 U.S. 64, 71–73 (1985)).

Accordingly, plaintiff's RLUIPA claims, if any, are dismissed.

IV. Fourth Amendment

In an abundance of caution, the Court addresses whether, liberally construed, plaintiff's amended complaint sufficiently alleges a Fourth Amendment claim against C.O. Margente for violating plaintiff's right to be free from unreasonable search and seizures during the June 14, 2015, search.

It does not.

The Supreme Court has recognized a constitutional "right of personal privacy, or a guarantee of certain areas or zones of privacy." Roe v. Wade, 410 U.S. 113, 152 (1973). Inmates retain this constitutional guarantee, but only within limited circumstances. See Harris v. Miller, 818 F.3d 49, 57 (2d Cir. 2016). "There is a long-established principle that the routine, random strip searches of inmates, including body cavity inspections, do not violate the Fourth Amendment." Vaughn v. Strickland, 2013 WL 3481413, at *4 (S.D.N.Y. July 11, 2013)

(internal quotation omitted). "Nevertheless, 'the Fourth Amendment still requires all searches conducted within a prison, including strip searches, to be reasonable.'" Id. (quoting Jean-Laurent v. Wilkerson, 438 F. Supp. 2d 318, 323 (S.D.N.Y. 2006), aff'd, 461 F. App'x 18 (2d Cir. 2012) (summary order)).

"To state a cognizable privacy claim, an inmate must allege that (1) he exhibited an actual, subjective expectation of bodily privacy, and (2) prison officials lacked sufficient justification to intrude on the inmate's [F]ourth [A]mendment rights." Telesford v. Annucci, 693 F. App'x. 1, 3 (2d Cir. 2017) (summary order) (alterations in original) (internal quotations omitted).

When analyzing the sufficient justification prong for a claim premised on an isolated search, courts apply the four-part balancing test articulated in Bell v. Wolfish, 441 U.S. 520, 559 (1979). Harris v. Miller, 818 F.3d at 58. The so-called "Bell factors" are: "[1] the scope of the particular intrusion; [2] the manner in which it is conducted; [3] the justification for initiating it; and [4] the place in which it is conducted." Harris v. Miller, 818 F.3d at 58 (alterations in original) (quoting Bell v. Wolfish, 441 U.S. at 559).

Plaintiff has sufficiently alleged facts supporting only the first Bell factor.

As alleged, the search was an invasive intrusion. An intrusion's scope varies depending on two factors: the type of search and who performs it. See Harris v. Miller, 818 F.3d at 58. "[I]t is generally considered a greater invasion to have one's naked body viewed by a member of the opposite sex." Id. at 59 (internal quotation omitted). However, "courts in this Circuit have distinguished between 'regular' and 'close' viewing and 'incidental' and 'brief viewing of a naked prisoner,' with the latter being found constitutional." Holland v. City of New York, 197 F. Supp. 3d 529, 543 (S.D.N.Y. 2016) (internal quotation omitted) (collecting cases).

9

Plaintiff's allegations suggest he was subjected to at least a visual body cavity search, an inherently invasive intrusion. See Harris v. Miller, 818 F.3d at 58. In addition, plaintiff alleges members of the opposite sex were present during the search, although plaintiff merely alleges he had to "walk in front of" female personnel. (Am. Compl. at 6).

However, as to the second Bell factor, plaintiff has not alleged facts that show the manner of the search was unreasonable. The manner of a search is more likely to be reasonable if the search is conducted in a respectful or "professional manner," rather than an abusive, frightening, or humiliating manner. Harris v. Miller, 818 F.3d at 59–60. "It is well established that in the course of these searches, 'officers may direct the arrestees to disrobe, shower, and submit to a visual inspection'; moreover, '[a]s part of the inspection, the arrestees may be required to manipulate their bodies.'" Vaughn v. Strickland, 2013 WL 3481413, at *5 (alterations in original) (quoting Florence v. Bd. of Chosen Freeholders, 566 U.S. 318, 341 (2012) (Alito, J., concurring)). Further, an officer's inappropriate comments, without additional allegations such as physical or sexual abuse, do not make unreasonable an otherwise reasonable search. See Malik v. City of New York, 2012 WL 3345317, at *13 (S.D.N.Y. Aug. 15, 2012), report and recommendation adopted, 2012 WL 4475156 (S.D.N.Y. Sept. 28, 2012).

Plaintiff's allegations that his boxers left his genitals exposed and he was not allowed to cover himself with his hands do not sufficiently allege C.O. Margente unreasonably conducted the search of plaintiff. Moreover, C.O. Margente's comments during the search—although inappropriate if true—do not make the search unreasonable.

As to the third Bell factor, plaintiff does not allege what C.O. Margente's justification was for conducting the search. And fourth, although plaintiff alleges female personnel were

10

present at some point during the search, plaintiff does not allege any facts suggesting the female personnel were "unnecessary spectators." See Harris v. Miller, 818 F.3d at 62.

Accordingly, plaintiff fails to allege a Fourth Amendment claim for unreasonable search and seizure against C.O. Margente for the June 14, 2015, search.

V. Eighth Amendment

Defendants argue plaintiff fails to state Eighth Amendment claims for sexual assault against C.O. Cacuzza Jr. or for unsanitary conditions against C.O. Margente.

The Court agrees.[6]

To state a claim for an Eighth Amendment violation, "an inmate must allege that: (1) objectively, the deprivation the inmate suffered was 'sufficiently serious that he was denied the minimal civilized measure of life's necessities,' and (2) subjectively, the defendant official acted with 'a sufficiently culpable state of mind . . . , such as deliberate indifference to inmate health or safety.'" Walker v. Schult, 717 F.3d 119, 125 (2d Cir. 2013) (alterations original) (quoting Gaston v. Coughlin, 249 F.3d 156, 164 (2d Cir. 2001)).

A. Sexual Abuse

Plaintiff fails to state an Eighth Amendment claim based on sexual abuse against C.O. Cacuzza Jr. for the August 7, 2015, search.

Under the Eighth Amendment, conditions of confinement "must not involve the wanton and unnecessary infliction of pain." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). "[S]exual abuse of a prisoner by a corrections officer may in some circumstances violate the prisoner's

---

[6] Neither party has explained whether plaintiff was a pretrial detainee or a post-conviction inmate at the time of these events. Defendants apply the Eighth Amendment standard to plaintiff's claim, and plaintiff does not object. However, even under the more lenient standard applicable to pretrial detainees under the Fourteenth Amendment's Due Process Clause, plaintiff fails to state a claim. See Darnell v. Pineiro, 849 F.3d 17, 35 (2d Cir. 2017).

11

right to be free from cruel and unusual punishment." Boddie v. Schnieder, 105 F.3d 857, 860–61 (2d Cir. 1997). Although sexual harassment not sufficiently "severe or repetitive" does not satisfy the objective prong, id. at 861, "a single incident of sexual abuse, if sufficiently severe or serious, may violate an inmate's Eighth Amendment rights." Crawford v. Cuomo, 796 F.3d 252, 257 (2d Cir. 2015). A plaintiff asserting an Eighth Amendment sexual abuse claim generally must allege physical contact to adequately plead the objective prong. See Holland v. City of New York, 197 F. Supp. 3d 529, 547 (S.D.N.Y. 2016) (collecting cases).

When analyzing the subjective prong, "the principal inquiry is whether the contact is incidental to legitimate official duties, such as a justifiable pat frisk or strip search, or by contrast whether it is undertaken to arouse or gratify the officer or humiliate the inmate." Crawford v. Cuomo, 796 F.3d at 257–58.

Plaintiff alleges only that C.O. Cacuzza Jr. sexually assaulted him by looking in his underwear and exposing his buttocks. Plaintiff does not allege any defendant ever physically contacted him, or allege any facts suggesting the search was conducted for the purpose of humiliating him or independent of legitimate penological purposes. Plaintiff therefore fails to satisfy either prong of an Eighth Amendment claim for sexual assault.

Accordingly, plaintiff's Eighth Amendment sexual assault claim against C.O. Cacuzza Jr. is dismissed.

B.  Unsanitary Conditions

Plaintiff also fails to state an Eighth Amendment claim based on unsanitary conditions against C.O. Margente for requiring plaintiff to sit in a B.O.S.S. chair in his underwear and slippers on June 14, 2015.

The Eighth Amendment requires prison conditions to be at least "humane." Gaston v. Coughlin, 249 F.3d at 164 (quoting Farmer v. Brennan, 511 U.S. 825, 832 (1994)). To satisfy the objective requirement of a claim based on unsanitary conditions of confinement, "the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." Walker v. Schult, 717 F.3d at 125 (citing Rhodes v. Chapman, 452 U.S. 337, 347 (1981); Phelps v. Kapnolas, 308 F.3d 180, 185 (2d Cir. 2002)). He must allege prison officials deprived him "of his 'basic human needs' such as food, clothing, medical care, and safe and sanitary living conditions." Id. (internal citations omitted). Exposure to germs alone does not create a deprivation sufficiently serious to satisfy the objective prong. See Townsend v. Clemons, 2013 WL 818662, at *7 (S.D.N.Y. Jan. 30, 2013), report and recommendation adopted, 2013 WL 868605 (S.D.N.Y. Mar. 4, 2013).

With respect to the subjective requirement:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This "deliberate indifference" element is equivalent to the familiar standard of "recklessness" as used in criminal law.

Phelps v. Kapnolas, 308 F.3d at 185–86 (citation omitted).

Plaintiff alleges C.O. Margente exposed plaintiff to unsanitary and unsafe conditions by forcing plaintiff to sit in the B.O.S.S. chair in his underwear and slippers, with his genitals exposed to germs and infections. Plaintiff's allegations are insufficient to state a sufficiently serious deprivation. Moreover, plaintiff fails to allege any facts suggesting C.O. Margente was aware of a substantial risk of serious harm from forcing plaintiff to sit in the B.O.S.S. chair in his underwear and slippers.

13

Accordingly, plaintiff's Eighth Amendment unsanitary and unsafe conditions claim against C.O. Margente is dismissed.

VI.     Fourteenth Amendment

Plaintiff fails to state claims for violation of his Fourteenth Amendment due process rights against C.O. Morrissey, C.O. Freeman, or Sgt. Roser for lost or destroyed property; or against Supt. T. Griffin, Deputy Commissioner P. Griffin, IGRC Supervisor Stanaway, or C.O. Smith for denial of grievances or violations of New York State Department of Corrections and Community Supervisions ("DOCCS") directives.

Procedural due process requires "that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." Chase Grp. Alliance LLC v. City of N.Y. Dep't of Fin., 620 F.3d 146, 150 (2d Cir. 2010) (quoting Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985)).  Thus, to sustain a Section 1983 claim based on an alleged violation of due process, a plaintiff must allege (i) he possesses a liberty or property interest protected by the Constitution or federal statutes, and (ii) he was deprived of that liberty or property interest without due process. Ciambriello v. County of Nassau, 292 F.3d 307, 313 (2d Cir. 2002).

A.      Lost or Destroyed Property

Plaintiff fails to state a claim for lost or destroyed property against C.O. Morrissey, C.O. Freeman, or Sgt. Roser for the alleged taking of his radio and three-gallon bucket on June 14, 2015.

"An unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." Hudson v.

Palmer, 468 U.S. at 533. Here, such a remedy was available to plaintiff in the form of an action in the New York State Court of Claims, but apparently was not pursued. See Davis v. New York, 311 F. App'x 397, 400 (2d Cir. 2009) (summary order) (Court of Claims action is adequate postdeprivation remedy, precludes prisoner's due process claim for lost personal property).

Accordingly, plaintiff's due process claim for lost or stolen property against C.O. Morrissey, C.O. Freeman, and Sgt. Roser is dismissed.

B. Grievances and DOCCS Directives

Plaintiff likewise fails to state a claim for violation of his Fourteenth Amendment due process rights against Supt. T. Griffin, Deputy Commissioner P. Griffin, IGRC Supervisor Stanaway, or C.O. Smith for denying his grievances or for failing to comply with DOCCS directives.

To state a claim for denial of access to the courts, "a plaintiff must allege that the defendant took or was responsible for actions that hindered [a plaintiff's] efforts to pursue a legal claim." Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003) (alterations in original) (internal quotation omitted). Notwithstanding the First Amendment's guarantee of the right to petition the government for redress, "inmate grievance procedures are not required by the Constitution and therefore a violation of such procedures does not give rise to a claim under [Section] 1983." Cancel v. Goord, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001).

Indeed, any claim that plaintiff was deprived of his right to petition the government for redress is belied by the fact of his bringing this lawsuit. See Harris v. Westchester Cty. Dep't of Corr., 2008 WL 953616, at *5 (S.D.N.Y. Apr. 3, 2008) ("[I]n the event that prison officials

15

ignore a grievance that raises constitutional claims, the proper avenue to seek relief is the course taken by plaintiff here: directly petitioning the government for redress of his claims.").

Moreover, it is well established that violation of state procedural rules or safeguards does not in itself constitute deprivation of due process, when the process actually provided suffices under the Constitution. See, e.g., Holcomb v. Lykens, 337 F.3d 217, 224 (2d Cir. 2003) ("[S]tate statutes do not create federally protected due process entitlements to specific state-mandated procedures.").

Accordingly, plaintiff's due process claims for denial of grievances and violations of DOCCS directives against Supt. T. Griffin, Deputy Commissioner P. Griffin, IGRC Supervisor Stanaway, and C.O. Smith are dismissed.

VII. State Law Claims

To the extent plaintiff's amended complaint can be read as asserting state law claims, the Court declines to exercise supplemental jurisdiction over them. See 28 U.S.C. § 1367(c)(3).

Plaintiff's state law claims, to the extent he asserts them, are therefore dismissed without prejudice.

VIII. Universal Declaration of Human Rights

Plaintiff's claims under the Universal Declaration of Human Rights are dismissed because the Universal Declaration of Human Rights does not create a federal cause of action. Joyner-El v. Giammarella, 2010 WL 1685957, at *3 n.4 (S.D.N.Y. Apr. 15, 2010).

IX. Leave to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure instructs that courts "should freely give leave" to amend a complaint "when justice so requires." Liberal application of Rule 15(a) is warranted with respect to pro se litigants, who "should be afforded every reasonable

opportunity to demonstrate that [they have] a valid claim." Matima v. Celli, 228 F.3d 68, 81 (2d Cir. 2000) (internal quotation omitted). District courts "should not dismiss [pro se complaints] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation omitted).

Here, the Court already granted plaintiff leave to amend and warned plaintiff that because his motion to amend "was prompted by his review of defendants' first motion to dismiss . . . absent exceptional circumstances, he will not be given another opportunity to amend his complaint." (Doc. #50 at 2). "Plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend." Jeanty v. Newburgh Beacon Bus Corp., 2018 WL 6047832, at *12 (S.D.N.Y. Nov. 19, 2018) (internal citations omitted). Moreover, plaintiff "has not suggested he is in possession of facts that would cure the deficiencies identified in this opinion." Id.

Accordingly, the Court declines to grant plaintiff leave to amend.

## CONCLUSION

The motion to dismiss is GRANTED.

The Clerk is instructed to terminate the pending motion (Doc. #77) and close this case.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal.  See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

Dated: November 28, 2018
      White Plains, NY

                SO ORDERED:

                _____
                Vincent L. Briccetti
                United States District Judge